UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NANCY TAYLOR,

       Plaintiff,

v.                           Case No.:  8:12-cv-518-T-33EAJ

UNITED STATES OF AMERICA,

       Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant United States of America's Motion to Dismiss (Doc. # 13), filed on April 25, 2013.  Plaintiff Nancy Taylor filed a Response in Opposition to the Motion (Doc. # 17) on May 8, 2013, and the Government filed a Reply on May 21, 2013.  The Government also filed a Notice of Supplemental Authority (Doc. # 24) on May 24, 2013.  Upon due consideration, the Motion to Dismiss is granted.

## I.  Factual Background

On February 2, 2006, Taylor obtained medical care from Erin Atkinson, A.R.N.P. at Tampa Family Health Centers, Inc. (hereafter, "the Clinic"). (Doc. # 1 at ¶ 18).  The Clinic is a community healthcare center that receives federal funding. (Id. at ¶ 4).  Taylor complained of yellow vaginal discharge, dyspareunia, and irregular vaginal bleeding. (Id. at ¶ 18). A pap smear was performed. (Id.).  The results were abnormal.

(Id.).  The pathology report specifically reported epithelial cell abnormality along with "atypical squamous cell, cannot exclude HSIL high grade squamous intraepithelial lesion)." (Id.).  The pathologist signing the report recommended "colposcopy/biopsy of the cervix and endo cervix." (Id.).  A handwritten note on Taylor's chart read: "refer for colpo/bx ASAP." (Id.).  However, it appears that Taylor was never told that the results of her pap smear were abnormal. (Id. at ¶ 19).  Although the Clinic faxed the Exodus Women's Clinic on February 28, 2006, regarding Taylor's abnormal pap smear, Taylor was never instructed to visit the Exodus Women's Clinic. (Id. at ¶¶ 18-19). Instead, the Clinic advised Taylor to receive yearly pap smears. (Id. at ¶ 19).

Thereafter, on June 25, 2007, Taylor returned to the Clinic complaining of vaginal discharge and dyspareunia. (Id. at ¶ 20).  She was seen by Peter Ackerman, M.D., who ordered another pap smear. (Id.).  Taylor returned to Dr. Ackerman on July 13, 2007, for a vaginal culture. (Id. at ¶ 21). Dr. Ackerman determined that Taylor had BV (bacterial vaginitis) and reported that her pap smear was normal.  He advised Taylor to use condoms. (Id.).

Taylor returned to the Clinic on August 23, 2007, for complaints of headache. (Id. at ¶ 22).  She returned to the

2

Clinic on September 10, 2007, and the office notes from that visit reflect that Taylor complained of heavy vaginal bleeding after sexual intercourse. (Id. at ¶ 23).  On September 17, 2007, Taylor underwent trans-abdominal and trans-vaginal examinations and the report, signed by Tracy Porter, A.R.N.P., indicated a "hypoechoic structure" among other things. (Id. at ¶ 24).

On October 11, 2007, Taylor returned to the Clinic complaining of vaginal bleeding after sexual intercourse. (Id. at ¶ 26).  On March 27, 2008, Taylor once again visited the Clinic and was seen by Josephine Adelufosi, A.R.N.P. (Id. at ¶ 27).  Taylor complained of breast pain, yellow vaginal discharge, and "foul odor x 3 months." (Id.).  A pelvic exam revealed "copious amounts of yellow foul vaginal discharge. Malodorous.  Some bleeding." (Id.).  Adelufosi noted that Taylor had an abnormal trans-vaginal ultrasound. (Id.).

Taylor visited the Clinic again on March 26, 2009, April 16, 2009, and September 4, 2009, for vaginal problems.  (Id. at ¶¶ 29-31).  During the September 4, 2009, visit, Taylor was seen by Maritza Perez-Merced, M.D.  (Id. at ¶ 31).  Dr. Perez-Merced referred Taylor to OB/GYN Jill Hechtman, M.D. (Id. at ¶ 33).  Upon Dr. Hechtman's examination, Taylor began to bleed profusely.  (Id.).  Dr. Hetchman sent Taylor directly to St.

3

Joseph's Women's Hospital. (Id.).

On September 16, 2009, cervical biopsy revealed that Taylor had cervical cancer. (Id. at ¶ 34). On September 17, 2009, an MRI identified a cervical mass (7.4 x 7.2 cm). (Id. at ¶ 35). Since the date of her diagnosis, Taylor "has undergone multiple hospitalizations and radical surgeries, which included removal of the pelvic organs including the rectum and vagina, leaving Nancy Taylor unable to have intercourse and requiring both a colostomy (defecating in a bag) and a urostomy (urinating in a bag) . . . and other extensive medical care and treatment." (Id. at ¶ 36).

## II.  **Procedural History**

Taylor's counsel sent a letter dated March 1, 2011, to the Clinic stating, "we learned that [the Clinic] may be a federally funded program and accordingly, have filed our notice of claim in accordance [sic] Section 28 C.F.R. 14.1" (Doc. # 1, Ex. 2). Taylor's counsel enclosed a completed Form 95 administrative claim.

The Form 95 administrative claim listed "Tampa Family Health Centers, Inc. d/b/a Tampa Family Health Center" as the appropriate federal agency. The Form 95 administrative claim was dated February 18, 2011, and listed the amount of damages as $2,000,000.00.

4

Thereafter, on September 28, 2011, Taylor's counsel sent a separate Form 95 administrative claim (dated September 26, 2011) to the "Office of the General Counsel of the U.S. Department of Health and Human Services."  The Department of Health and Human Services denied Taylor's claim on February 1, 2012.  Taylor thereafter filed her negligence action against the United States pursuant to the Federal Tort Claims Act in this Court on March 9, 2012. (Doc. # 1).

The Government filed its Answer and Affirmative Defenses on May 21, 2012. (Doc. # 5).  Among other defenses, the Government asserted: "Plaintiff failed to exhaust administrative remedies pursuant to the FTCA by failing to timely file an administrative claim within 2 years of the claim's accrual." Id. at 6.  The Government seeks dismissal based on the argument that this Court lacks jurisdiction over this case because Taylor's claim is time barred.  Taylor has responded, and the Government has filed a reply.

### III. Legal Standard Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter

jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is factual, the Court may look outside the four corners of the complaint to determine if jurisdiction exists. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982). In a factual attack, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Because the very power of the Court to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint. Eaton, 692 F.2d at 732.

**IV.  Analysis**

Under the FTCA, a tort claim against the United States must be "presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). The statute of limitations under § 2401(b)

6

is jurisdictional.  Magruder v. Smithsonian Inst., 758 F.2d 591, 593 (11th Cir. 1985) ("The 2 year limitations period is a jurisdictional requisite to suit and is strictly construed.").  In addition, "[T]he accrual of a cause of action under section 2401(b) is a matter of federal law." Phillips v. United States, 260 F.3d 1316, 1318-19 (11th Cir. 2001).

In general, a tort claim accrues for purposes of § 2401(b) at the time of the plaintiff's injury.  United States v. Kubrick, 444 U.S. 111, 120 (1979).  However, in medical malpractice cases, the rule has evolved to mean that the limitations period does not begin to run "until the plaintiff has discovered both his injury and its cause."  Id. at 120, n.7.

In Kubrick, the Supreme Court revisited the question of when a medical malpractice claim accrues under the FTCA.  444 U.S. 111 at 122-25.  The Supreme Court rejected a previous line of cases that held that a claim does not accrue until a plaintiff learns that his injury was negligently caused.  Id. at 121-22, nn.7-8.  The Supreme Court did not believe that Congress, when it enacted the FTCA, intended that "for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its

cause should receive identical treatment." Id. at 122. The Kubrick Court concluded that the very purpose of the limitations statute would be undermined if a plaintiff were excused from promptly seeking legal or medical advice once he was "in possession of the critical facts that he has been hurt and who has inflicted the injury." Id. at 122-23.

Relying on Kubrick, the Eleventh Circuit has found that "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985).

In the context of determining when a claim predicated upon the failure to diagnose or treat a medical condition accrues, the Eleventh Circuit's decision in McCullough v. United States, 607 F.3d 1355 (11th Cir. 2010), is dispositive. In that case, the plaintiff was rendered a paraplegic after VA physicians failed to diagnose a spinal abscess. Id. at 1357. Shortly before his diagnosis, the plaintiff had twice visited the VA complaining of neck pain and swelling. Id. The VA diagnosed the plaintiff as having a fever and did not diagnose the spinal abscess. Id.

As in the present case, the Government contended that the plaintiff's claim was barred because it was submitted more than two years after his diagnosis.  The district court found that the plaintiff's claim was indeed time barred, and the Eleventh Circuit agreed.  The Eleventh Circuit further explained: "Once Mr. McCullough learned that his paralysis had been caused by an abscess in the exact location where he had previously complained about severe pain, 'there was no reason for him not to seek advice from others as to whether his treatment had been negligent.'" Id. at 1360 (citing Price, 775 at 1494).

In this case, the undisputed facts show that Taylor sought treatment for vaginal bleeding and discharge on numerous occasions (from February 2, 2006 to September 4, 2009) and was diagnosed with benign conditions, such as bacterial vaginitis.  She was advised to use condoms and stay current with pap smears.  However, on September 16, 2009, she was diagnosed with cervical cancer.  At the time of her diagnosis with cervical cancer, Taylor (in the exercise of reasonable diligence) should have been aware of both her injury and its connection with some act, or failure to act, by the Clinic, given that Taylor persistently sought treatment from the Clinic for vaginal bleeding and discharge, but the

Clinic failed to diagnose her condition of having cervical cancer, including a large malignant tumor.

Taylor requested a copy of her medical records and spoke with an attorney in November 2009, shortly after being diagnosed with cancer. (Doc. # 16 at ¶ 5). Unfortunately, Taylor's counsel did not provide the appropriate federal agency with a Form 95 administrative claim until September 28, 2011. Taylor's untimely claim is consequently time barred.

A similar situation arose in the recent case of Motta Ex. Rel. A.M. v. United States, No. 12-14338, 2013 U.S. App. LEXIS 10484 (11th Cir. May 24, 2013). There, on March 3, 2008, Motta took her minor child a federally funded facility due to a testicular abnormality. Id. at *1-2. The physician incorrectly diagnosed the child's condition as a hernia. Id. at *2. The next day, Motta took her child to a local emergency room because his condition deteriorated. Id. He was diagnosed with testicular torsion and his left testicle was removed. Id. Shortly thereafter, Motta hired counsel to pursue a medical malpractice claim. Id. Despite several attempts, Motta's counsel did not file the Form 95 administrative claim with the appropriate federal agency until March 19, 2010. Id. at *5. The district court dismissed Motta's FTCA action upon finding that it was time barred. Id.

10

The Eleventh Circuit affirmed even though Motta's counsel missed the deadline by only 15 days.  Id. at *8.  The same result is warranted here.[1]

Taylor's citation to Florida state law cases as well as to cases from other circuits is not persuasive in light of the Eleventh Circuit's dispositive discussion in McCullough and recent holding in Motta.  This Court lacks jurisdiction over this case because Taylor failed to present her Form 95 administrative claim to the appropriate federal agency within two years of the claim's accrual.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant United States of America's Motion to Dismiss (Doc. # 13) is **GRANTED**.

(2)   The Clerk is directed to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of June, 2013.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[1]The Motta court as well as the Government in this action address two doctrines that may be applicable to save an untimely FTCA case: constructive filing and equitable tolling. However, Taylor has not raised these arguments in response to the Government's Motion to Dismiss and, thus, the Court declines to sua sponte address these doctrines here.

11

Copies: All Counsel and Parties of Record